OPINION
The Cuyahoga County Sheriff, defendant-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, General Division, Case No. CV-339883, in which the trial court confirmed the arbitration award in favor of the Ohio Patrolman's Benevolent Association, plaintiff-appellee. Defendant-appellant assigns three errors for this court's review. The Buckeye State Sheriffs' Association has also filed an amicus curiae brief in support of defendant-appellant in which a single error is assigned for this court's review.
For the following reasons, defendant-appellant's appeal is not well taken.
In December 1996, the Ohio Patrolman's Benevolent Association, plaintiff-appellee, (hereinafter "OPBA"), and the Cuyahoga County Sheriff, defendant-appellant, (hereinafter "defendant-appellant"), entered into a collective bargaining agreement governing the terms and conditions of employment for correctional officers employed by defendant-appellant at the Cuyahoga County Corrections Center. The agreement went into effect on August 8, 1996.
In August 1996, the OPBA filed a grievance on behalf of the correctional officers in which it was alleged that defendant-appellant's third-shift staffing assignments violated the Health and Safety provisions contained in the collective bargaining agreement as well as the Minimum Jail Standards promulgated by the Ohio Department of Rehabilitation and Correction. Defendant-appellant maintained the staffing decisions constituted a proper exercise of management rights under the contract and involved no violation of the explicit limitation of that authority.
Each floor of the Cuyahoga County Corrections Center is divided into four dormitory-like pods of forty-eight prisoners, with two tiers of twelve cells each in the rear. Each cell accommodates two prisoners who are locked in their cell at night; i.e., third shift. Facing each pod is a "J station," which consists of a desk and monitoring equipment. A correctional officer at the J station has visual and audio observation of each pod and each individual cell. During first and second shift, one correctional officer is assigned to each pod. In addition, a control room operator is stationed in a centrally-located control room on each floor that provides electronic control of cell and pod doors to the elevator.
During third shift, one correctional officer conducts a watch tour of the pod under his supervision every one-half hour. The officer engages the switchboard at the respective J station and proceeds to four separate locations in each pod. While making the rounds, the officer visually inspects each cell and activates four separate buttons in sequence. After all four buttons have been engaged, the officer returns to the J station. The process of checking all cells and engaging all four buttons takes approximately two minutes. Any irregularity in the procedure, whether button not engaged or engaged out of sequence, alerts the master control board in the center of the jail which is manned throughout third shift.
On third shift, when all prisoners are sleeping and locked down in their cells, defendant-appellant has assigned one correctional officer to supervise two pods located on the tenth floor of the corrections center between Jail I and Jail II. A connecting door is left open between two separate J stations as a mutual access. The officer is expected to watch two pods by sitting in a chair located between each J station. Apparently, this practice, known as "double podding," is a long standing procedure dating back to the 1970's. It is this practice of double podding that formed the basis for the grievance by the OPBA.
Pursuant to the collective bargaining agreement, the grievance proceeded to arbitration before an arbitrator appointed through the Federal Mediation and Conciliation Service. An arbitration hearing was conducted. On August 11, 1997, the arbitrator issued his decision and award in which it was determined that the practice of double podding created unsafe working conditions for the correctional officers and ordered the immediate cessation of the practice of double pod assignments.
On September 4, 1997, the OPBA filed its application for an award confirming the arbitration award pursuant to R.C. 2711.09. Defendant-appellant opposed the application to confirm and petitioned the trial court to vacate the award on the grounds that the arbitrator exceeded his authority and issued an arbitrary and capricious award that did not draw its essence from the collective bargaining agreement. Defendant-appellant alleged further that the arbitrator had fallen asleep on at least two separate occasions during the arbitration hearing.
On July 8, 1998, the trial court granted the OPBA'S application to confirm the award of the arbitrator. On August 10, 1998, defendant-appellant filed a timely notice of appeal from the judgment of the trial court.
Defendant-appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED IN FAILING TO VACATE THE ARBITRATOR'S AWARD WHERE THE AWARD DID NOT DRAW ITS ESSENCE FROM THE COLLECTIVE BARGAINING AGREEMENT.
Defendant-appellant argues, through its first assignment of error, that the trial court improperly confirmed the arbitrator's award in favor of the OPBA. Specifically, defendant-appellant argues that the award itself conflicts with the express terms of the collective bargaining agreement, imposes additional requirements that are not contained within the collective bargaining agreement, cannot be rationally derived from the terms of the collective bargaining agreement and is based upon general considerations of fairness and equity rather than the precise terms of the contract. It is defendant-appellant's position that, since the arbitrator's decision regarding the practice of double podding is unsupported by any reference to specific safety violations, the arbitrator breached his duty to interpret the terms of the contract and effectively imposed additional requirements relating to equal work for correctional officers on all three shifts, a requirement that does not appear anywhere in the collective bargaining agreement. Defendant-appellant maintains further that the noticeable absence of specific safety violations in the arbitrator's decision demonstrates the award's rational inadequacy and further demonstrates that the award can only be based upon the arbitrator's individual concepts of safety and security rather than the precise terms of the contract.
R.C. 2711.10 provides that a trial court shall enter an order vacating an arbitration award upon the application of any party to the arbitration where:
 (A) The award was procured by corruption, fraud, or undue means.
 (B) There was evidence of partiality or corruption on the part of the arbitrators, or any of them.
 (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
In Cleveland Police Patrolmen's Assn. v. Cleveland (1995),107 Ohio App.3d 248, 255-256, 668 N.E.2d 548, 552-554, this court set forth the general standard of review for vacating an award of an arbitrator. This court stated:
 It is well settled that the jurisdiction of courts in the area of arbitration and arbitration awards is limited. See, e.g., Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 551 N.E.2d 186; Warren Edn. Assn. v. Warren City Bd. of Edn. (1985), 18 Ohio St.3d 170, 480 N.E.2d 456. Judicial intervention in this area is statutorily restricted by R.C. 2711.09, 2711.10
and 2711.11. These sections give the court the power to vacate or modify an arbitration award only on certain enumerated grounds.
 With regard to the basis that R.C. 2711.10 provides for vacating an arbitrator's award, this court has cautioned that judicial review of the matter must be "very narrow." Cuyahoga Community College v. Dist. 925, Serv. Emp. Internatl. Union AFL-CIO
(1988), 42 Ohio App.3d 166, 170, 537 N.E.2d 717, 720-721.
Furthermore, the Ohio Supreme Court has declared:
 "The whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award. Thus, this court has stated, `[i]t is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts.' Campbell v. Automatic Die Products Cc. (1954). 162 Ohio St. 321, 329, [55 O.O. 195, 198, 123 N.E.2d 401, 405] Indeed, this court has held that `[a] mere ambiguity in the opinion accompanying an arbitration award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for vacating the award when such award draws its essence from the collective bargaining agreement.' Goodyear v. Local Union No. 200 (1975), 42 Ohio St.2d 516
[71 O.O.2d 509, 330 N.E.2d 703], paragraph one of the syllabus. An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and award, and where the award is not arbitrary, capricious or unlawful. Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn. (1986), 22 Ohio St.3d 80, 83-84, 488 N.E.2d 872, 875, 876.
See, also, Cleveland Bd. of Edn. v. Internatl. Bhd. of Firemanand Oilers Local 701 (1997), 120 Ohio App.3d 63, 696 N.E.2d 658.
In this case, a review of the record from the trial court demonstrates that, contrary to defendant-appellant's position, the arbitrator's award did, in fact, draw its essence from the collective bargaining agreement. The contract between the parties contains the following pertinent clauses:
 Section 3. The employer agrees to maintain sanitary, safe and healthful conditions in accordance with federal, state and local laws, standards and regulations. The Union agrees that the Employees shall cooperate in maintaining all such conditions.
 Section 4. Any unsafe or unhealthy conditions discovered by an Employee should be reported to the Employee's supervisor. The Employer shall take all appropriate steps, as soon as reasonably possible to correct any unhealthy or unsafe conditions.
When applying the specific contractual clauses regarding health and safety set forth above to the award of the arbitrator herein, it is apparent that a rational nexus exists between the agreement and the award. Cleveland Police Patrolman's Association v.Cleveland, supra. The arbitrator was presented with the dispute in which it was alleged that double podding violated the health and safety provisions of the collective bargaining agreement. The arbitrator determined that double podding did constitute a safety violation under the collective bargaining agreement given the fact that one third shift correctional officer was responsible for twice as many prisoners as officers on first and second shift. The award is not based, as defendant-appellant maintains, on the concept of equal work for correctional officers nor is it based upon general considerations of fairness and equity. The award is based upon application of a specific contractual provision regarding health and safety to the facts of the specific grievance presented. In light of the existence of a rational nexus between the collective bargaining agreement and the underlying award, this court finds that the trial court did not err by confirming the arbitration award. See Cuyahoga CommunityCollege v. Dist. 925, Serv. Emp. Internatl. Union AFL-CIO, supra.
Accordingly, defendant-appellant's first assignment of error is not well taken.
Defendant-appellant's second assignment of error states:
 II. THE TRIAL COURT ERRED IN FAILING TO VACATE THE ARBITRATOR'S AWARD WHICH CLEARLY EXCEEDED HIS AUTHORITY.
The Buckeye State Sheriffs' Association's sole assignment of error states:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S APPLICATION TO VACATE THE ARBITRATOR'S DECISION AND AWARD.
Having a common basis in both law and fact, this court shall consider defendant-appellant's second assignment of error and the Buckeye State Sheriffs' Association's sole assignment of error simultaneously. Both assigned errors are based upon the proposition that the arbitrator clearly exceeded his authority in concluding that the practice of double podding violated the health and safety provisions of the collective bargaining agreement. Specifically, it is argued that the arbitrator's award constitutes an improper limitation on defendant-appellant's right to manage the operations of the correctional facility, a right which is clearly designated under the collective bargaining agreement exclusively to defendant-appellant. Defendant-appellant maintains further that the arbitrator exceeded his authority by failing to decide the underlying issue personally. It is defendant-appellant's position that the arbitrator appeared to be sleeping on at least two occasions during the arbitration hearing and, therefore, could not have issued a just and informed award.
As previously stated, in a labor relations context, a reviewing court will not vacate an arbitrator's award so long as the award draws its essence from the collective bargaining agreement. Queen City Lodge No. 69, Fraternal Order of Police,Hamilton Cty., Ohio, Inc. v. Cincinnati (1992), 63 Ohio St.3d 403,406, 588 N.E.2d 802, 805. An arbitrator is restricted to the interpretation and application of the collective bargaining agreement, and although the arbitrator may construe ambiguous contract language, the arbitrator is without authority to disregard or modify plain and unambiguous provisions in the collective bargaining agreement. Ohio Office of CollectiveBargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME,AFL-CIO (1991), 59 Ohio St.3d 177, 572 N.E.2d 71. An arbitrator's powers are established by the agreement from which the arbitrator draws his or her authority, and the arbitrator has no authority to decide issues which the parties submit to review. State FarmMut. Ins. Co. v. Blevins (1990), 49 Ohio St.3d 165,551 N.E.2d 955. Given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority is limited, and once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary, or capricious, a reviewing court's inquiry under R.C. 2711.10 (D) is concluded. Dayton v. Fraternal Order of Police (1991),76 Ohio App.3d 591, 596.
Defendant-appellant maintains that the underlying award is invalid since it effectively limited defendant-appellant's right to manage the correctional facility as set forth in the collective bargaining agreement. The specific contractual provision defendant-appellant relies upon states:
 Section 1. Except as specifically limited by explicit provision of this Agreement, the Employer shall have the exclusive right to manage the operation, control the premises, direct the working force, and maintain efficiency of operations.
While it is true that defendant-appellant has the exclusive right to manage the correctional facility pursuant to the terms of the collective bargaining agreement, the arbitrator's award must be viewed in light of the specific grievance presented to the arbitrator by the OPBA, namely, the allegation that double podding constituted a safety hazard in violation of the health and safety provisions of the collective bargaining agreement. Clearly, the arbitrator did not exceed his authority in reaching his decision but merely interpreted the terms contained within the agreement in the context of the grievance presented. The arbitrator specifically determined that "while the standards for safety and health are met on earlier shifts, they are not met on the night shift." (Opinion and Award P. 4.)
Defendant-appellant's contention that the arbitrator was sleeping on a number of occasions during the hearing thereby depriving defendant-appellant of a just and full hearing is equally unpersuasive. In light of the fact that defendant-appellant did not object to the alleged sleeping arbitrator at the hearing, defendant-appellant cannot now challenge the arbitrator's inattentiveness on appeal simply because the award did not favor defendant-appellant. See Barmenv. Kekst (Oct. 6, 1994), Cuyahoga App. No. 66950, unreported. Where two parties agree to submit their dispute to arbitration, each agrees to accept the result regardless of its legal or factual inaccuracy. Appellate review does not extend to the merits of such an award absent evidence of material mistake or extensive impropriety. Cleveland v. Fraternal Order ofPolice, Lodge No. 8 (1991), 76 Ohio App.3d 755. No such compelling evidence has been presented herein.
Accordingly defendant-appellant's second assignment of error as well as the sole assignment of error presented by the Buckeye State Sheriffs' Association are not well taken.
Defendant-appellant's third and final assignment of error states:
 III. THE TRIAL COURT ERRED IN REFUSING TO VACATE AN AWARD WHICH WAS CLEARLY UNLAWFUL, ARBITRARY AND CAPRICIOUS.
Defendant-appellant argues, through its third and final assignment of error, that the award of the arbitrator should have been vacated by the trial court since the award was unlawful, arbitrary and capricious. Specifically, defendant-appellant maintains the arbitrator's decision is not supported by evidence of damages caused by the alleged health and safety violation, the award goes beyond the four corners of the collective bargaining agreement by imposing restrictions upon defendant-appellant's managerial rights and the award is based upon the arbitrator's personal concepts of fairness rather than the collective bargaining agreement itself. In short, defendant-appellant's third assignment of error is a combination of the various arguments previously raised throughout defendant-appellant's appeal and already determined by this court.
Therefore, this court need not address defendant-appellant's third assignment of error as it has been rendered moot by this court's disposition of all previously assigned errors. See App.R. 12 (A) (1) (c).
Judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL, TERRENCE, P.J., and McMONAGLE, TIMOTHY E., J.,CONCUR.
 ______________________________ MICHAEL J. CORRIGAN JUDGE